**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**TERRANCE PRUDE,**
**Petitioner,**

**v.** **Case No. 24-C-1039**

**GARY BOUGHTON,**
**Respondent.**

---

## DECISION AND ORDER

On August 15, 2024, Terrance Prude filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The petition arises out of his Wisconsin conviction of five counts of armed robbery with threat of force for crimes committed in 1999. Prude committed his crimes while he was a juvenile, and he received a cumulative sentence of 80 years' imprisonment with eligibility for parole. Prude contends that a recent change to a Wisconsin Department of Corrections housing and classification policy, when combined with a preexisting policy of the Wisconsin Parole Commission, renders him effectively ineligible for parole until after the end of his life expectancy. He alleges that this result violates *Graham v. Florida*, 560 U.S. 48 (2010), which holds that the Eighth Amendment prohibits imposition of life-without-parole sentences on juvenile nonhomicide offenders. Before me now is the respondent's motion to dismiss the petition as untimely under 28 U.S.C. § 2244(d).

## I. BACKGROUND

On May 1, 2000, following a guilty plea, Prude was convicted of five counts of armed robbery with threat of force. The armed robberies occurred while Prude was a juvenile. The court sentenced him to consecutive 20-year sentences on four counts and

imposed and stayed a fifth 20-year sentence on the remaining count in favor of a 20-year term of probation. Thus, Prude is currently serving an 80-year prison sentence.

Prude became eligible for parole in 2019. He had his first parole hearing on August 19, 2020, and others since then, but the Parole Commission has not recommended his release. One of the reasons the Commission has given for deferring parole is that Prude has not "successfully transition[ed] through lower levels of security" within the Wisconsin DOC. (Am. Pet. Ex. 4 at 2.) Prude is currently housed in maximum security, and he alleges that the Parole Commission has a policy of denying parole unless the offender is housed in minimum or minimum community custody. (Am. Pet. ¶ 7.) Prude further alleges that, on July 25, 2022, the Wisconsin DOC "effectively" adopted a policy—known as a "mandatory restrictor"—under which he is not eligible to be housed in minimum or minimum community custody until he is within five years of his adjusted release date. (*Id.* ¶ 13 & Ex. 2.) Prude alleges that his adjusted release date is July 10, 2054, and that therefore, under the mandatory restrictor, he will be ineligible for minimum or minimum community custody until July 10, 2049, when he will be 67 years old. (*Id.* ¶ 7.) Prude alleges that his life expectancy 50.6 years, and that therefore the combination of the Parole Commission policy and the Wisconsin DOC's mandatory restrictor has the effect of converting his existing sentence into a de facto sentence of life without parole. (*Id.* ¶ 33.)

Prude's habeas claim is that his alleged de facto life sentence violates *Graham v. Florida*'s prohibition on life-without-parole sentences for juvenile nonhomicide offenders. For relief, Prude asks that the court either commute or modify his current 80-year sentence to a total term of either 25, 30, or 35 years in prison. (Am. Pet. ¶ 37(c).)

Alternatively, he asks that the court "fix[] a sentence" that results in an adjusted release date that, under the Wisconsin DOC's mandatory restrictor, will allow him to be housed in minimum or minimum community custody long enough to enable him to satisfy, before the end of his life expectancy, the Parole Commission's policy requiring housing in minimum custody prior to parole. (*Id.* ¶ 37(f).)

After I determined that Prude's current petition was not second or successive (ECF No. 5) and ordered the respondent to file a response to the petition (ECF No. 7), respondent filed a motion to dismiss on the ground that the petition is untimely. The parties have filed their written submissions on the motion, and I address it below.

**II. DISCUSSION**

Under 28 U.S.C. § 2244(d)(1), a one-year period of limitation applies to an application for a writ of habeas corpus by "a person in custody pursuant to the judgment of a state court." The period runs from the latest of certain specified events. In the present case, that event is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Respondent argues that, at the latest, this date was June 22, 2022, the date on which the Wisconsin DOC's mandatory restrictor against housing an inmate in minimum custody became effective. Because Prude did not file his petition until August 15, 2024, respondent contends that the petition is untimely.

Prude's first response to this argument is to contend that § 2244(d) does not even apply to his claim because he is challenging parole and prison administrative policies rather than a judgment of a state court. This argument is based on *Cox v. McBride*, 279 F.3d 492 (7th Cir. 2002). There, the petitioner brought a habeas petition challenging the

decision of a prison disciplinary board that resulted in a loss of two years' good-time credit. The Seventh Circuit noted that a prison disciplinary board is not a court and held that because the petitioner was challenging a decision of the board rather than his underlying conviction, his claim was not subject to § 2244(d). *Id.* at 493–94.

Here, however, Prude is unquestionably challenging his underlying conviction. He asks that this court shorten the sentence contained in the state-court judgment of conviction so that he will be eligible for a minimum-custody classification before the end of his life expectancy. (Am. Pet. ¶ 37(c), (f).) Prude is not asking the court to alter any decision of the Parole Commission to deny parole. Nor is he seeking an injunction that would require either the Parole Commission or the Wisconsin DOC to change the policies at issue in this case. Indeed, an injunction or other order requiring the Parole Commission or the Wisconsin DOC to change their policies or procedures would likely not be a remedy available in habeas corpus; instead, the injunction would have to be sought under 42 U.S.C. § 1983. *See Heredia v. Blythe*, 638 F. Supp. 3d 984, 990 n.2 (W.D. Wis. 2022) (finding that § 1983, rather than habeas, is the proper procedural vehicle for "seeking a change in parole procedures rather a release from prison"). Accordingly, Prude's petition is subject to the one-year limitation period imposed by § 2244(d).[1]

Prude contends that even if § 2244(d)(1)(D) controls, he could not have discovered the factual predicate of his claim through the exercise of due diligence until December 11,

---

[1] I note that although Prude has requested that the court shorten his sentence as a remedy for the effect of the parole and housing policies on his parole eligibility, I express no view on whether that would be an appropriate remedy. At this point, respondent has not argued that it is not an appropriate remedy or suggested that Prude's claim should have been framed as a request for an injunction against the policies and been brought under § 1983.

2023. According to Prude, that is the date on which the Wisconsin DOC policy at issue—the mandatory restrictor—became "operational." (Br. in Opp. at 2.) As support for this contention, Prude cites a memorandum authored by DOC administrators in which they state that a document known as the Instruments for Custody Classification ("IFCC") will replace the prior standards used to determine custody classifications. (Am. Pet. Ex. 3.) That memorandum is dated December 4, 2023, and it states that the IFCC will apply to all classification and reclassification hearings started on or after December 11, 2023. However, while it appears to be true that the IFCC was not implemented until December 2023, it does not follow that the mandatory restrictor was not implemented until that date. That is so because the same mandatory restrictor might have appeared in an earlier policy that was used by the DOC until the new IFCC went into effect. In this regard, respondent notes that a DOC employee would testify at an evidentiary hearing that the mandatory restrictor was in effect from July 25, 2022 to December 11, 2023, when it was incorporated into the current IFCC manual. (Reply Br. at 2.) However, at this point, no DOC employee has submitted a declaration or other evidence to that effect.

Further, even if the mandatory restrictor was in effect since July 2022, the present record does not allow me to find that Prude's failure to discover the restrictor until he received the December 4 memorandum was caused by a lack of due diligence. Respondent does not explain whether or how inmates were made aware of the restrictor's existence prior to December 4 memorandum, other to state that it was available in prison libraries as of July 2022. But the mere fact that the restrictor manual was sitting on a prison library shelf is not sufficient to show that all inmates knew or should have known that it existed.

Respondent also contends that it does not matter whether Prude should have learned of the restrictor prior to December 2023 because the restrictor does not apply to him in the first place. Here, respondent makes two arguments. First, he argues that Prude has not been subject to a housing reclassification hearing since December 11, 2023, and therefore he cannot show that the version of the IFCC that became effective in December 2023 has been applied to him. But Prude responded to this argument by showing that he had a reclassification hearing on November 27, 2024, and that the mandatory restrictor was applied to him at that time to keep him in maximum custody. (ECF No. 16-1.) Further, I do not see why it should matter whether the mandatory restrictor has actually been applied to Prude during a reclassification hearing. So long as the restrictor exists and means what Prude alleges it means, it prevents him from meeting the Parole Commission's policy requiring classification in minimum custody until he reaches five years from his adjusted release date. Thus, it is the mere existence of the restrictor, rather than its formal application to Prude at any single reclassification hearing, that has the alleged effect of turning his 80-year sentence into a de facto life-without-parole sentence. Accordingly, Prude's claim accrued on the date on which he should have learned through the exercise of due diligence that the restrictor was adopted and would govern all future reclassification hearings. As stated above, the record as it exists does not enable me to identify that date.

Respondent's second argument is that the mandatory restrictor in the IFCC, by its terms, does not apply to Prude. The relevant text of the IFCC manual provides as follows:

> Individuals who have one or more of the following mandatory restrictors are excluded from being classified minimum and minimum community custody:
>
> . . . .
>
> 6. Sentence Structure
>
> *Male System:*
>
> Individuals with more than five years to their adjusted release date.
>
> *Female System:*
>
> Individuals with more than eight years to their adjusted release date.
>
> Application of this mandatory restrictor shall not be applied for those individuals with the following circumstances:
>
> 1. Parole eligible individuals who have reached their initial Parole Eligibility Date (PED) and have a parole endorsement to reduce custody and/or an indication of release consideration.
>
> . . . .

(Am. Pet. Ex. 2 at 3 (emphasis in original).) Respondent notes that Prude is eligible for parole and therefore satisfies the first element of the exception to the mandatory restrictor based on sentence structure. However, Prude replies by noting that he does not have a parole endorsement to reduce custody and/or an indication of release consideration, and that therefore the restrictor still applies to him. (Sur-Reply Br. at 3.)

I do not believe that the question of whether the mandatory restrictor applies to Prude is relevant to the timeliness of the petition. Rather, that goes directly to the merits of Prude's claim: if the mandatory restrictor is not preventing Prude from satisfying the Parole Commission's policy requiring classification in minimum custody prior to release on parole, then the restrictor is not turning Prude's sentence into a de facto life-without-parole sentence. At this stage, I cannot draw any conclusions about the effect of the restrictor. I do not know what it takes to receive a "parole endorsement to reduce custody"

or an “indication of release consideration.” Perhaps this language means that if the Parole Commission indicates that the inmate is likely to be paroled soon if he completes part of his sentence in minimum custody, then the Wisconsin DOC will consider classifying the inmate in minimum custody even though he is more than five years from his adjusted release date. If that’s true, then the restrictor would not be turning Prude’s sentence into a de facto life-without-parole sentence, since it recognizes that transfer to minimum custody is a prerequisite to being paroled and contains an avenue through which the inmate can obtain such a transfer without waiting until five years before his adjusted release date. But again, at this point, the record does not allow me to draw conclusions about what the restrictor means. And, in any event, because the applicability of the restrictor goes to the merits of Prude’s claim rather than timeliness, resolution of this issue is not relevant to the motion to dismiss.

In short, the timeliness of Prude’s petition is governed by § 2244(d)(1)(D). However, the record does not enable me to find that Prude should have discovered the factual basis of his claim—the existence of the mandatory restrictor—more than one year before he filed this action. Thus, respondent’s motion to dismiss will be denied. However, the respondent is free to renew the issue of timeliness as part of briefing on the merits of the petition by submitting declarations or other evidence tending to show when a reasonably prudent inmate would have learned about the restrictor’s existence. Respondent is also free to raise any of the merits issues noted in this motion, including whether a modification of Prude’s original sentence is an appropriate remedy in this case and whether the mandatory restrictor prevents Prude from being housed in minimum custody prior to five years before his adjusted release date. And of course, respondent is

free to argue that even if Prude's understanding of the relevant parole and DOC policies is correct, his sentence does not violate the Eighth Amendment or *Graham v. Florida*.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that respondent's motion to dismiss the petition as untimely (ECF No. 11) is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's motion to file a sur-reply brief is **GRANTED**.

**IT IS FURTHER ORDERED** that, within 30 days of the date of this order, respondent answer the petition, complying with Rule 5 of the Rules Governing § 2254 Cases.

**FINALLY, IT IS ORDERED** that briefing on the merits of the petition shall proceed as follows: (1) petitioner shall have 45 days from the date of respondent's answer within which to file his brief in support of his petition; (2) respondent shall have 45 days following the filing of petitioner's initial brief within which to file a brief in opposition; and (3) petitioner shall have 30 days following the filing of respondent's opposition brief within which to file a reply brief, if any.

Dated at Milwaukee, Wisconsin, this 26th day of February, 2025.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge